IN RE PABLO ANDINO ESPEJO, Respondent...

No. 62. Argued April 5, 1945.—Decided June 15, 1945.

*Pablo Andino, pro se,* and *Miranda & Miranda Esteve* for respondent.
*R. A. Gómez, Prosecuting Attorney (Fiscal),* for The People.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The *Fiscal* of this court, on behalf of the Attorney General of Puerto Rico, instituted the present disbarment proceeding against Attorney Pablo Andino Espejo, charging him with having certified on October 14, 1944, as notary, a public deed whereby Sixto Heleria Feliciano sold to his concubine Gertrudis Cruz for "one dollar and other consideration" a house and lot, notwithstanding the fact that said attorney personally knew that the said property had ceased to belong to Mr. Heleria for over ten years. After the proceeding has gone through all its stages, and having weighed all the evidence introduced at the hearing, we consider the following facts to have been proved:

That on or about 1929 Sixto Heleria Feliciano was the owner of an urban property, a house and lot situated in Santurce, which he recorded in his name in the Registry of Property of San Juan; that by public deed No. 16, executed before Notary Victoriano M. Fernández on May 18, 1929, Sixto Heleria Feliciano sold said property to N. Ortega & Co., a commercial partnership, through Mr. Roberto Quin-

tero, its managing partner, for $400, of which amount the purchaser retained $300 to pay a mortgage on the property in favor of Isidro G. Luiña; that said lien was canceled on May 29, 1933, by public deed No. 16, executed before Notary Victoriano M. Fernández; that on July 31, 1933, N. Ortega & Co., through its managing partner Roberto Quintero, sold the property to Joaquín Bonilla, by public deed No. 28, executed before the same notary above mentioned; that none of these deeds of conveyance and cancellation of mortgage was recorded in the registry of property, for which reason Sixto Heleria Feliciano appeared as owner.

That on October 2, 1944, respondent Pablo Andino Espejo called at the home of Mr. Roberto Quintero and told him that he represented a veteran who was the owner of the house which Quintero administered and whose rents he collected; that Quintero informed him that he had purchased that house from Heleria in 1929 and had later sold it to Bonilla, to which the respondent replied that they "have been collecting those rentals during all this time and they must be refunded," that "something must be done here and I am going to fix this matter definitively; you must give this man money" in order to fix all the deeds, otherwise the house would be sold; that Quintero answered that he had to see Bonilla since he was the one receiving the rents, and the respondent replied that he could wait three or four days. That accordingly Quintero informed Bonilla of all that had happened and they both went to see Bonilla's attorney, Mr. Eduardo H. F. Dottin, explaining the matter to him; that said attorney advised them not to give out one cent and that if Heleria sold the house the sale would be void and he would be committing a felony.[1] It was further proved that in Sep-

---

[1] As to Mr. Quintero's call, Attorney Dottin testified as follows:

"Roberto Quintero came very frightened to me and to frighten him more I told him, 'Listen, Bonilla is entitled to sue in foreclosure, he wants his property.' He answered, 'That man, that attorney has given me a couple of days to make up my mind, if I do not fix the matter up he is going to lose the property. I told him that the property is not mine.' 'All right,

tember 1944, Bonilla, whom Attorney Dottin had asked to get the articles of copartnership of Ortega & Co. and the original deed of sale and cancellation of mortgage in order to record the purchase made by Bonilla, went to see Sixto Heleria and offered to give him money if he would get him the deed of sale in favor of Ortega & Co.; that Heleria promised to do so but returned later and told him that he needed money, to which Bonilla answered that if he brought him the deed he would be paid well; that four or six days later, Heleria went back to Bonilla and told him "I am going to see an attorney because I am in trouble" and went away; and that a few days later Quintero told him about respondent's call.

Finally it was proven that, although the respondent knew that the house and lot in question had been sold by Heleria to Ortega & Co. and by this firm to Joaquín Bonilla for more than 10 years, on October 14, 1944, at a time subsequent to his call on Quintero, he certified, as notary, deed No. 53 whereby Sixto Heleria Feliciano sold the property to his concubine Gertrudis Cruz (who it was proved had been the maid in respondent's house) for one dollar and other valuable consideration; that said deed was presented in the Registry of Property of San Juan on October 24 and recorded on October 25, 1944; that afterwards respondent called on Attorney Dottin and obtained some information as to the deed cancelling the mortgage and in the course of the conversation, as alleged by Attorney Dottin, the latter told respondent that he had "heard that Heleria was trying to sell for a second time that property" and that respondent then answered that Heleria had already sold the property and

---

but I must settle this. Who is the attorney or notary that has intervened in this matter,' 'Pablo Andino.' '¡Pablo Andino!' 'Yes, he has given me two days to make up my mind.' 'Well, that is a bluff of Pablo Andino, if he has done that.' I told him, 'Listen, do not give a cent to anyone, that is a trick of Heleria. Do not give a cent, even if the property has not been recorded yet. He sold by public deed and there is nothing to worry about. However, do bring me the deeds'."

that he had executed the deed of sale and recorded it in the registry; that respondent did not state to whom it had been sold but stated that "Heleria was an old veteran and as such he was interested in the matter"; that on the next day attorney Dottin verified in the Registry of Property that the property had been sold by Heleria to his concubine and a few days later Attorney Dottin filed in the name of Bonilla in the District Court of San Juan an action to annul the sale and recorded the complaint in the registry, which was answered by respondent in the name of Heleria and Gertrudis Cruz, the case being pending of hearing.

Respondent testified in his own defense and denied that he had called on Mr. Quintero on October 2, 1944, and alleged that it was not until November 20 of said year that he had made the call and that its object had been to obtain from Mr. Quintero the deed of the cancellation of the mortgage of Isidro G. Luiña which encumbered the property and that Quintero had told him that he did not remember whether it had been executed by Attorney Agosto or by Attorney Dottin; that he should go to see them; that he went to Attorney Agosto and the latter told him he had not executed the deed and then he went to Attorney Dottin's office where he obtained the information and then went to the General Registrar of Protocols and obtained the certificate; that Attorney Dottin informed him that Quintero had told him that Heleria had conveyed the house to his concubine; that it was not until he went to the General Register that he learned that Heleria had sold the house to Ortega & Co. and subsequently that said firm had sold it to Joaquín Bonilla. As to the deed executed by him on October 14, 1944, he stated that he had executed it at the request of Gertrudis Cruz because Heleria, her ex-paramour, wanted to convey the house to her because they had worked together and that Heleria had bought the house originally with their earnings and that the latter wanted to donate the house to Gertrudis and for

this reason he had sold it for one dollar and other consideration.[2]

According to the facts proved in this case, there is no doubt that on October 14, 1944, when the respondent certified as notary the deed by virtue of which Sixto Heleria Feliciaño sold the house in question to his concubine Gertrudis Cruz for one dollar and other valuable consideration, respondent was aware that Heleria was not the owner of the property because he had been so informed by Mr. Quintero when the respondent called on him at the beginning of October. That respondent spoke to Quintero in the sense that he represented a veteran, was a fact which was corroborated by the testimony of Attorney Dottin when the latter stated that respondent had told him that "Heleria was an old veteran," and similarly as to the fact that the visit which respondent made to Quintero was at the beginning of October and not in November, for Attorney Dottin stated that Mr. Quintero had visited him more than three weeks prior to respondent and had told him that the latter "had asked for I do not know how many things." Furthermore, it is a significant fact that according to Mr. Bonilla's testimony, on September 1944 the latter had offered to pay Heleria if he obtained the original deeds, and that when he had refused to give money in advance, Heleria stated that he was going to see

---

[2] In connection with respondent's testimony it seems advisable to copy here the testimony of Attorney Dottin upon being cross-examined by respondent himself:

"Q. What time elapsed between Quintero's visit to you, in connection with this matter, and my visit?

"A. I believe Quintero made more than one call.

"Q. Just a moment. I want it to be clear. What time elapsed between Quintero's visit to you when he stated that I had been to his house, and my visit?

"A. What time elapsed between Quintero's visit when I learned that you had called on him? *More than three weeks.*

"Q. Was it not three days?

"A. No. *The man came to my office and told me that you had asked for I do not know how many things,* I asked him for the deeds, and he brought me one; that was not sufficient, he went away and got me the other one, in order to give you the notes which I gave you in my office." (Italics ours.)

132

an attorney and that a few days later Quintero told Bonilla of respondent's call.

In our opinion the allegations of the complaint, in so far as they charge the respondent with having had knowledge of the fact that Sixto Heleria Feliciano was not the owner of the house which he sold to his concubine on October 14, 1944, and that he had knowledge of said fact because Mr. Roberto Quintero had so told him on October 2, 1944, when respondent called on him and asked him in the name of a veteran, who according to respondent was the owner of the house, to refund the rents of the house, because the veteran wanted money or otherwise he would sell the house, have been fully proved.

Since the acts performed by Attorney Pablo Andino Espejo constitute inmoral conduct in the discharge of his professional duties, he must be suspended from practice as an attorney and notary and his name stricken from the Roll of Attorneys for the period of two years, counted from the date of the judgment which shall be rendered in this case.